The above entitled actions were consolidated by order of the court. The bill of complaint in Docket 144-167 was filed by Montclair Trust Company, hereinafter referred to as Trust Company, to foreclose certain mortgages pledged as collateral with the Trust Company by The Star Company, hereinafter referred to as Star, to secure payment of a promissory note dated December 30th, 1936, in the sum of $525,000 payable upon demand, and upon which there was due at the time the bill of complaint was filed as alleged therein $273,959.99 and interest from June 1st, 1945, at the rate of 1% per annum.
Before process was served in the suit by Trust Company, Star brought its bill against the Trust Company for injunctive relief and accounting, Docket 148-545.
Prior to the fall of 1936 Trust Company was carrying among its assets, stocks, bonds, mortgages, real estate and notes which had been acquired in years prior to 1930 and which it had been unable to liquidate. In that situation fourteen directors and former directors of the Trust Company, in the fall of 1936, following conferences, committee meetings, c., in respect to the condition of the assets of the Trust Company, entered into a written agreement bearing date of December 14th, 1936. The agreement provided that the subscribers, aggregating not less than $500,000, would purchase stock of a corporation to be formed, or contribute such amount to a trust fund, for the purpose of purchasing from the Trust Company certain assets following a general classification enumerated in the agreement.
Within sixteen days from the date of the execution of said agreement, and on December 29th, 1936, there was formed on behalf of said directors and former directors the corporation known as The Star Company, and said company purchased from the Trust Company certain of its assets, paying the consideration therefor in cash and by the execution of the promissory note aforementioned, which assets so purchased *Page 213 
were then pledged or mortgaged by Star to the Trust Company to secure the payment of the note. On the following day the note, deeds, bonds, mortgages, assignments, and reassignments as collateral were drafted and executed. The only agreement after that date which was executed by any of the parties, other than in relation to the sale or release of the assets which Star pledged with the bank, was an agreement dated January 23d 1937, between the original fourteen directors and the Trust Company.
The agreement made between the fourteen directors and former directors and the Trust Company, bearing date of December 14th, 1936, is admitted in the pleadings as is also the agreement of December 29th, 1936, in which Star offered to purchase certain of the assets of the Trust Company, and that said offer was immediately accepted and the sale of such assets accomplished on December 30th, 1936.
The agreement of December 14th, 1936, recites that the individuals mentioned therein are or have been directors of the Trust Company and "desire, for the benefit of said Trust Company to relieve said Trust Company of the burden of carrying in its portfolio certain assets which cannot be immediately liquidated." The method by which this was to be accomplished is set forth in paragraph one of the agreement which provides that the subscribers to the agreement agree with the Trust Company to cause to be formed a corporation with all powers "to purchase from Montclair Trust Company certain assets as more fully hereinafter set forth." The agreement then provides for the issuance of stock to the subscribers in the corporation to be formed and for the making of a contract to be subsequently executed in which the Trust Company will agree with the corporation "to administer and manage the purchased assets, without any service charge to the corporation, giving said assets the same care and attention as though the assets remained in its own portfolio, and having all power needful to the proper administration of said assets." That losses might occur in the liquidation of some of the assets was recognized when in the twelfth paragraph thereof where it is provided, that in computing profit or recovery, "the purchased assets shall be treated as a whole, *Page 214 
the profit on one item being used as an off-set against loss on others, the intention being that upon eventual liquidation of all of the purchased assets, any net profit, after the corporation shall have liquidated all of its indebtedness * * * and shall have returned to the subscribers the amount subscribed plus interest at the rate of 2% (later reduced by agreement to 1%) shall be paid to the Montclair Trust Company."
In the foreclosure suit Star filed answer and counter-claim and also brought its independent bill of complaint against the Trust Company in which counter-claim and original bill of complaint it substantially prays for identical relief, namely, accounting for amounts received by the Trust Company on the liquidation of the assets purchased by the Star and for credit to Star on said note, "for the difference between the amount credited on the same and the true value of assets sold," and generally for the difference in face value of the collateral and the amounts received and injunctive relief from further proceedings in the foreclosure.
Star predicates its right to relief upon the charge that the Trust Company violated what it claims was a fiduciary obligation. It further charges that the whole purpose of the formation of Star and the consummation of the transactions between it and the Trust Company "was to provide for a slow and orderly liquidation of said assets when they reached the book value thereof, * * * that the liquidation of said assets was to be postponed for as long a period as was necessary, so that the complainant corporation might be assured of recovering the full price it paid the defendant Trust Company for said assets * * *."
I do not find from the evidence and the agreements that it was contemplated by the parties that there was to be no liquidation of the pledged assets until they reached the book value thereof, nor that the liquidation was to be postponed for as long a period as was necessary to bring about that result. Such claim is contrary to the agreement of January 23d 1937, which provides that in any proceeding which the Trust Company may institute or legal action which it may take to enforce payment or collection of the note, or any renewal or *Page 215 
renewals thereof, it will credit against the sum then due and unpaid thereon an amount equal to any and all cash dividends, or other dividends if and when converted into cash, declared and paid by Star and received by the Trust Company.
In the agreement of December 14th, 1936, reference is made to the degree of responsibility which the Trust Company was to assume with reference to the liquidation of the assets which it took as collateral, as follows: "* * * to administer and manage the purchased assets, without any service charge to the `corporation,' giving said assets the same care and attention as though the assets remained in its own portfolio, and having all powers needful to the proper administration of said assets." The degree of care thus required did not exceed that required of any pledgee, namely, such care as prudent business men exercise in regard to their own property of a similar kind under similar circumstances. The agreements and the minutes of both corporations invariably refer to the transaction as a purchase of the stocks, bonds, mortgages and real estate by Star.
The witness, Francis M. Crawley, one of the parties to the contract of December 14th, 1936, complained that some of the assets in his opinion were sacrificed. It appeared from his testimony that the assets of which he complained were disposed of during the period when, as he himself described it, "the market was dead," but that he felt it would come back. Even though the market had come back, wisdom after the event is not the test of responsibility. In re Cross, 117 N.J. Eq. 429;176 Atl. Rep. 101. Moreover, this witness testified that the stockholders of Star annually received "a statement from the treasurer of Star which reflected all losses on all property, including participations, all notes and everything else" and that he never made any objection. Such was also the testimony of J.J. Crawley, the president of Star, who said he familiarized himself with the financial report submitted by the treasurer and was satisfied that it disclosed the situation in regard to liquidation of assets, and that he registered no objection, and that statements were regularly sent to the stockholders. The minutes of the Trust Company and those of Star show that during the period from 1936 on *Page 216 
the stockholders of Star were regularly advised of the manner in which the liquidation of the pledged assets was proceeding and no objection thereto was made.
Ten years have elapsed since the making of the agreements between the Trust Company and Star during which period the liquidation of the collateral proceeded with knowledge on the part of Star of all material facts during all of which period Star remained inactive and abstained from impeaching the agreements and all acts thereunder. This amounts to acquiescence.Basen v. Clinton Trust Co., 115 N.J. Law 546;181 Atl. Rep. 67; McSweeney v. Equitable Trust Co., 127 N.J. Law 299, 305;22 Atl. Rep. 2d 282. The Trust Company as pledgee had a right to rely upon the agreements with the pledgor and to rely upon the pledgor's acquiescence in the disposal of said assets and the liquidation of the same. Morris Canal Co. v. Lewis, 12 N.J. Eq. 329,332.
Generally, if there has been unreasonable delay in asserting claims, a party knowing his rights does not seasonably avail himself of means at hand for their enforcement, but suffers his adversary to incur expense, or change his position, or if there has been actual or passive acquiescence in the performance of the act complained of, equity will refuse her aid.
Decree will be advised in favor of Montclair Trust Company for the balance of principal due on promissory note and interest as therein provided. And the bill of complaint of The Star Company will be dismissed. *Page 217